FILED
2016 Jun-30 PM 03:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

**KENDRICK JACKSON,**

    **PLAINTIFF,**

**V.**                                                   **CIVIL ACTION NO.:**

**TRANSUNION LLC,**
**EQUIFAX MORTGAGE SOLUTIONS,**         *JURY DEMAND*
**OLD REPUBLIC CREDIT.COM, AND**
**CREDIT TECHNOLOGIES, INC.,**

    **DEFENDANTS.**

## COMPLAINT

COMES NOW the plaintiff, Kendrick Jackson ("Plaintiff"), by and through his undersigned counsel, and with knowledge as to his own acts, upon information and belief and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery, alleges as follows:

### PRELIMINARY STATEMENT

1.    This is an action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §1681, *et seq*. (Fair Credit Reporting Act or FCRA). "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become

inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian,* Case No.: 1:10-cv-1064-AJT-TRJ (E.D. Va. March 18, 2011). Congress made the following findings when it enacted the FCRA:

> **(1)** The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

> **(2)** An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

> **(3)** Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

> **(4)** There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4). Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the

requirements of this subchapter." 15 U.S.C. § 1681(b).  Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'"  *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

2.      "Mixed files" create a false description of a consumer's credit history.

3.      A "mixed file" occurs when information that relates to Consumer B appears in Consumer A's credit file.  More specifically, a mixed file "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report." *F.T.C. v. TRW, Inc.* 784 F.Supp. 361, 362 (N.D. Tex. 1991)[1].

4.      More recently, the New York Attorney General defined a mixed file as credit file information that is mixed with that of another consumer.[2] *See also* http://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.

---

[1] Experian Information Solutions, Inc. is formerly known as TRW, Inc.

[2] *See* http://www.ag.ny.gov/press-release/ag-schneiderman-announces-groundbreaking-consumer-protection-settlement-three-national Last visited March 31, 2016.

5.      Defendants were aware of the government enforcement actions described in the preceding the filing of Plaintiff's Complaint.

6.      Mixed files are not a new phenomenon.  The consumer reporting agencies have been on notice of the existence of mixed files for over thirty (30) years.  *See Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

7.      Mixed files occur despite consumers' unique personal identifying information, such as Social Security numbers or date of birth, or both.

8.      Further, mixed files result in the disclosure of a consumers' most personal identifying and financial information absent the consumer's knowledge or consent, or both.

9.      Mixed files also result in the debt collection harassment of innocent consumers because debt collectors use CRA databases to "skip trace" debtors and locate the alleged debtor's address and telephone number.

10.     In the 1990's the Federal Trade Commission ("FTC") filed a lawsuit against Equifax, Trans Union and Experian's predecessor TRW because of their failure to comply with the FCRA including the mixing of consumers' files.

11.     In the 1990's the Attorneys General of a number of states filed a lawsuit against Equifax, Trans Union and Experian's predecessor TRW because of their failure to comply with the FCRA, including the mixing of consumers' files.

12.     In 1991, TRW signed a Consent Order with the FTC.  To prevent the occurrence or reoccurrence of a mixed file, TRW agreed to use, for matching and identification purposes, a consumer's full identifying information, defined as full first and last name, full street address, zip code, year of birth, any generational designation and social security number.

13.     In 1992, Trans Union signed a Consent Order with the Attorneys General of 17 states.  Trans Union agreed that it would maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files.  For example, procedures during the reinvestigation process include assigning mixed file cases to Senior Investigators who, as appropriate, must pull all files related to the consumer, fully verify disputed information, make any changes, deletions or additions to correct the file and resolve the dispute, and prepare a summary of the problem to be filed with another department for corrective action.

14.     In 1992, Equifax signed an Agreement of Assurances with the Attorneys General of 18 states.  Equifax agreed it would maintain reasonable

procedures to prevent mixed files by accepting and using a consumer's full identifying information (full first and last name, middle initial, full street address, zip code, year of birth, any generational designation, and Social Security number) for matching and identification purposes.

15. In 1994, Equifax signed a Consent Order with the FTC. Equifax agreed it would follow reasonable procedures to assure the maximum possible accuracy of the information on a consumer's file including, but not limited to, procedures to detect logical errors prior to reporting information on a consumer's file, procedures to prevent mixing as a result of data entry by third parties when the third party requests a consumer's report, and procedures during a reinvestigation specifically designed to resolve consumer disputes related to a mixed file.

16. The defendants in this case are aware of Federal Trade Commission and state attorney general enforcement actions[3] concerning or related to mixed files.

17. In 2002, the jury in *Judy Thomas v. Trans Union LLC,* District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas with another consumer and failing to

---

[3] Including the most recent Alabama state attorney general enforcement action settled May 20, 2015. See http://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx Last visited June 29, 2016.

unmix them despite Ms. Thomas' disputes. The jury awarded Ms. Thomas $5 million in punitive damages and $300,000 in actual damages. Despite the verdict, Trans Union continues to mix consumers' files with other consumers' files.

18.     In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC,* Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $2.7 million in punitive damages and $219,000 in actual damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms. Williams' disputes. Despite the verdict, Equifax continues to mix consumers' files with other consumers' files.

19.     In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC,* District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $18.4 million in punitive damages and $180,000 in actual damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Millers' disputes. Despite the verdict, Equifax continues to mix consumers' files with other consumers' files.

20.     Over the last ten years, Experian has been sued hundreds of times by consumers whose files were mixed with a different consumer by Experian.

21.    In *Calderon v. Experian*, the court compelled Experian to produce a list of prior lawsuits concerning mixed files against it for the five (5) years preceding Plaintiff's complaint. Also, the court compelled Experian to produce discovery on the number of mixed file disputes it handled in the preceding five (5) years. *Calderon v. Experian*, Case 1:11-cv-00386-EJL-MHW, pp. 7-8 (D. Idaho Jun. 18, 2012). Indeed, Experian has produced the *Calderon* list in other lawsuits, including lawsuits filed by the undersigned.

22.    Despite federal law, Congressional mandate, federal and state government enforcement actions, hundreds of other consumer lawsuits, mixed files remain a significant problem for consumers, including Plaintiff.

23.    The sale of consumers' most private and sensitive personal and financial information.

24.    Equifax Mortgage Solutions, Old Republic Credit.com and Credit Technologies, Inc. are aware of the above-described government enforcement actions.

25.    Equifax Mortgage Solutions, Old Republic Credit.com and Credit Technologies, Inc. were aware of the *Williams* verdict before March 1, 2016.

26.     Equifax Mortgage Solutions, Old Republic Credit.com and Credit Technologies, Inc. were aware of the *Thomas* verdict before March 1, 2016.

27.     Equifax Mortgage Solutions, Old Republic Credit.com and Credit Technologies, Inc. were aware of the *Miller* verdict before March 1, 2016.

28.     Equifax Mortgage Solutions, Old Republic Credit.com and Credit Technologies, Inc. were aware of the existence of mixed files, as defined above, before Plaintiff filed this lawsuit.

29.     Equifax Mortgage Solutions, Old Republic Credit.com and Credit Technologies, Inc. have been sued numerous times by consumers whose files were mixed with a different consumer.

## JURISDICTION & VENUE

30.     This Court has jurisdiction pursuant to 15 U.S.C. § 1681p.

31.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

32.     Plaintiff Kendrick Jackson ("Plaintiff") is an adult individual resident of this judicial district. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

33.     Defendant TransUnion LLC ("Trans Union") is a Delaware corporation with its principal place of business in the state of Illinois.  Trans Union does business in this judicial district. Trans Union is a nationwide consumer reporting agency as defined by 15 U.S.C. § 1681a(f).  Trans Union regularly engages in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties.  Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

34.     Defendant Equifax Mortgage Solutions ("EMS") is a foreign corporation with its principal place of business, upon information and belief, in the state of New Jersey.  EMS does business in this judicial district.  EMS is a consumer reporting agency ("CRA") as defined by 15 U.S.C. 1681a(f) and a reseller of credit information.   EMS, in its capacity as a consumer reporting agency and reseller of consumer information, obtains consumer credit information from nationwide consumer reporting agencies.   The consumer credit information maintained for individual consumers by the nationwide consumer reporting agencies includes public record information, collection accounts, trade accounts, personal identifying information and inquiries.  Once EMS receives the requested consumer credit information, it

assembles and merges the information into a EMS credit report.  EMS sells the credit report to third parties.  In the credit reporting industry, this is known as a "3 in 1" or "tri-merge" credit report.

35.     Defendant Old Republic Credit.com ("Old Republic") is a foreign corporation with its principal place of business, upon information and belief, in the state of Ohio.  Old Republic does business in this judicial district.  Old Republic is a consumer reporting agency ("CRA") as defined by 15 U.S.C. 1681a(f) and a reseller of credit information.  Old Republic, in its capacity as a consumer reporting agency and reseller of consumer information, obtains consumer credit information from nationwide consumer reporting agencies.   The consumer credit information maintained for individual consumers by the nationwide consumer reporting agencies includes public record information, collection accounts, trade accounts, personal identifying information and inquiries.   Once Old Republic receives the requested consumer credit information, it assembles and merges the information into an Old Republic credit report.  Old Republic sells the credit report to third parties.  In the credit reporting industry, this is known as a "3 in 1" or "tri-merge" credit report.

36.     Defendant Credit Technologies, Inc. ("Credit Tech") is a foreign corporation with its principal place of business, upon information and belief,

in the state of Michigan.  Credit Tech does business in this judicial district.

Credit Tech is a consumer reporting agency ("CRA") as defined by 15 U.S.C.

1681a(f) and a reseller of credit information.  Credit Tech, in its capacity as a

consumer reporting agency and reseller of consumer information, obtains

consumer credit information from nationwide consumer reporting agencies.

The consumer credit information maintained for individual consumers by the

nationwide consumer reporting agencies includes public record information,

collection accounts, trade accounts, personal identifying information and

inquiries.    Once Credit Tech receives the requested consumer credit

information, it assembles and merges the information into an Credit Tech

credit report.  Credit Tech sells the credit report to third parties.  In the credit

reporting industry, this is known as a "3 in 1" or "tri-merge" credit report.

37.    Trans Union, EMS, Old Republic and Credit Technologies are

referred to collectively as the "Defendants" throughout the complaint.

38.    Defendants sell consumer reports concerning individuals who

apply for credit, including mortgages.

## FACTUAL ALLEGATIONS

39.    Defendants are regulated as "consumer reporting agenc[ies]"

("CRA") under the FCRA 15 U.S.C. § 1681a(f).

40.    EMS, Old Republic and Credit Tech CBC are CRAs and Resellers of credit information pursuant to 15 U.S.C. § 1681a(u).

41.    Defendants primary business is the sale of consumer reports.

42.    Defendants sell millions of consumer reports (commonly referred to as "credit reports" or "reports") per day and also sell credit scores.

43.    Pursuant to the FCRA, Defendants must follow reasonable procedures which assure that the reports they sell meet the standard of "maximum possible accuracy."  15 U.S.C. § 1681e(b).

44.    Defendants sold credit reports to third parties with inaccurate and derogatory information concerning Plaintiff.  The information includes, but is not limited to, public record and account information (the "inaccurate information").  The information is false because the information relates to another consumer.  The inaccurate information harms Plaintiff's credit reputation because it does not accurately depict his credit history and creditworthiness.

45.    Trans Union prepared and issued credit reports concerning Plaintiff that included the inaccurate information.  Upon information and belief, Trans Union identified Plaintiff's file as a "confirmed mixed file" as that term is defined by Experian's settlement agreement with the New York Attorney General.  Upon information and belief, Trans Union sold Plaintiff's

credit report to third parties for transactions that did not relate to Plaintiff. Plaintiff disputed the inaccurate information to Trans Union. Upon information and belief, Trans Union reported the inaccurate information to third parties. Plaintiff disputed the inaccurate information to Trans Union.

46.    In or around January 2015, Plaintiff applied for a loan with National Bank of Commerce.

47.    EMS received a request from National Bank of Commerce for Plaintiff's credit report on or about January 21, 2015.

48.    Upon information and belief, said creditor certified to EMS that it had a permissible purpose to obtain Plaintiff's credit report.

49.    Upon information and belief, the permissible purpose for National Bank of Commerce to obtain Plaintiff's credit report from EMS was to determine his eligibility for credit.

50.    Upon information and belief, EMS requested a consumer report pertaining to Plaintiff from Equifax, Experian and Trans Union.

51.    Upon information and belief, EMS certified to the CRAs that it had a permissible purpose to obtain Plaintiff's consumer report.

52.    Upon information and belief, the permissible purpose for EMS to obtain Plaintiff's credit report from the CRAs was for National Bank of Commerce to determine his eligibility for credit.

53.     EMS received consumer reports from the CRAs.

54.     EMS prepared and sold a credit report to National Bank of Commerce in connection with Plaintiff's application for credit in or around January 2015.

55.     The EMS credit report included the inaccurate information described above.

56.     Before EMS sold the credit report to National Bank of Commerce it did not do anything to assure the maximum possible accuracy of the information contained in Plaintiff's credit report.

57.     For example, the EMS credit report sold to Southwest Funding included an unpaid judgment reported by Trans Union.  Said credit report did not any public records, judgments or otherwise, reported by Equifax and Experian.

58.     Before selling Plaintiff's report to National Bank of Commerce, EMS took no actions to determine whether the information it reported to National Bank of Commerce was accurate.

59.     EMS did not contact any of the CRAs including Trans Union, to address any of the inconsistencies prior to selling the credit report to National Bank of Commerce.

60.    In or around January 2015, Plaintiff applied for a loan with National Bank of Commerce.

61.    Old Republic received a request from National Bank of Commerce for Plaintiff's credit report on or about January 21, 2015.

62.    Upon information and belief, said creditor certified to Old Republic that it had a permissible purpose to obtain Plaintiff's credit report.

63.    Upon information and belief, the permissible purpose for National Bank of Commerce to obtain Plaintiff's credit report from Old Republic was to determine his eligibility for credit.

64.    Upon information and belief, Old Republic requested a consumer report pertaining to Plaintiff from Equifax, Experian and Trans Union.

65.    Upon information and belief, Old Republic certified to the CRAs that it had a permissible purpose to obtain Plaintiff's consumer report.

66.    Upon information and belief, the permissible purpose for Old Republic to obtain Plaintiff's credit report from the CRAs was for National Bank of Commerce to determine his eligibility for credit.

67.    Old Republic received consumer reports from the CRAs.

68.    Old Republic prepared and sold a credit report to National Bank of Commerce in connection with Plaintiff's application for credit in or around January 2015.

69.     The Old Republic credit report included the inaccurate information described above.

70.     Before Old Republic sold the credit report to National Bank of Commerce it did not do anything to assure the maximum possible accuracy of the information contained in Plaintiff's credit report.

71.     For example, the credit report sold to National Bank of Commerce included an unpaid judgment reported by Trans Union. Said credit report did not any public records, judgments or otherwise, reported by Equifax and Experian.

72.     Before selling Plaintiff's report to National Bank of Commerce, Old Republic took no actions to determine whether the information it reported to National Bank of Commerce was accurate.

73.     Old Republic did not contact any of the CRAs including Trans Union, to address any of the inconsistencies prior to selling the credit report to National Bank of Commerce.

74.     Old Republic received a dispute from the plaintiff.

75.     In or around January 2015, Plaintiff applied for a loan with Southwest Funding.

76.     Credit Tech received a request from Southwest Funding for Plaintiff's credit report on or about January 10, 2015.

77.     Upon information and belief, said creditor certified to Credit Tech that it had a permissible purpose to obtain Plaintiff's credit report.

78.     Upon information and belief, the permissible purpose for Southwest Funding to obtain Plaintiff's credit report from Credit Tech was to determine his eligibility for credit.

79.     Upon information and belief, Credit Tech requested a consumer report pertaining to Plaintiff from Equifax, Experian and Trans Union.

80.     Upon information and belief, Credit Tech certified to the CRAs that it had a permissible purpose to obtain Plaintiff's consumer report.

81.     Upon information and belief, the permissible purpose for Credit Tech to obtain Plaintiff's credit report from the CRAs was for Southwest Funding to determine his eligibility for credit.

82.     Credit Tech received consumer reports from the CRAs.

83.     Credit Tech prepared and sold a credit report to Southwest Funding in connection with Plaintiff's application for credit in or around January 2015.

84.     The Credit Tech credit report included the inaccurate information described above.

85.   Before Credit Tech sold the credit report to Southwest Funding it did not do anything to assure the maximum possible accuracy of the information contained in Plaintiff's credit report.

86.   For example, the credit report sold to Southwest Funding included an unpaid judgment reported by Trans Union.  Said credit report did not any public records, judgments or otherwise, reported by Equifax and Experian.

87.   Before selling Plaintiff's report to Southwest Funding, Credit Tech took no actions to determine whether the information in the credit report was accurate.

88.   Credit Tech did not contact any of the CRAs, including Trans Union, to address any of the inconsistencies prior to selling the credit report to Southwest Funding.

89.   As a result of Defendants' failure to comply with the requirements of the FCRA, Plaintiff suffered and continues to suffer actual damages, including credit denials, economic loss, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

## COUNT ONE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (against Trans Union)

90.     Plaintiff     adopts     and     incorporates     the     above-numbered paragraphs as if fully stated herein.

91.     Trans Union negligently and willfully failed to comply with the requirements of the FCRA.

92.     As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered and continues to suffer actual damages, including economic loss, credit denials, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks statutory and punitive damages in an amount to be determined by the jury.

93.     Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681o(a).

## COUNT TWO – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against EMS)

94.     Plaintiff     adopts     and     incorporates     the     above-numbered paragraphs as if fully stated herein.

95.     EMS negligently and willfully failed to comply with the requirements of the FCRA.

96.     As a result of EMS's failure to comply with the requirements of the FCRA, Plaintiff suffered and continues to suffer actual damages, including economic loss, credit denials, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks statutory and punitive damages in an amount to be determined by the jury.

97.     Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681o(a).

## COUNT THREE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Old Republic)

98.     Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

99.     Old Republic negligently and willfully failed to comply with the requirements of the FCRA.

100.     As a result of Old Republic's failure to comply with the requirements of the FCRA, Plaintiff suffered and continues to suffer actual

damages, including economic loss, credit denials, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks statutory and punitive damages in an amount to be determined by the jury.

101. Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681o(a).

### COUNT FOUR – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Credit Tech)

102. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

103. Credit Tech negligently and willfully failed to comply with the requirements of the FCRA.

104. As a result of Credit Tech's failure to comply with the requirements of the FCRA, Plaintiff suffered and continues to suffer actual damages, including economic loss, credit denials, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff

seeks damages in an amount to be determined by the jury. Plaintiff also seeks statutory and punitive damages in an amount to be determined by the jury.

105. Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681o(a).

## JURY DEMAND

106. Plaintiff requests a jury trial on all claims.

## PRAYER

Wherefore, Plaintiff prays for judgment against Defendants as follows:

On the First Claim for Relief:

    1. Actual damages to be determined by the jury;

    2. Punitive damages to be determined by the jury;

    3. Statutory damages to be determined by the jury; and

    4. Attorneys' fees and costs.

On the Second Claim for Relief:

    1. Actual damages to be determined by the jury;

    2. Punitive damages to be determined by the jury;

    3. Statutory damages to be determined by the jury; and

    4. Attorneys' fees and costs.

On the Third Claim for Relief:

    1. Actual damages to be determined by the jury;

   2.  Punitive damages to be determined by the jury;

   3.  Statutory damages to be determined by the jury; and

   4.  Attorneys' fees and costs.

On the Fourth Claim for Relief:

   1.  Actual damages to be determined by the jury;

   2.  Punitive damages to be determined by the jury;

   3.  Statutory damages to be determined by the jury; and

   4.  Attorneys' fees and costs.

Dated: June 30, 2016

Respectfully submitted,

*/s/ Micah S. Adkins*
Micah S. Adkins (ASB-8639-I48A)
**THE ADKINS FIRM, P.C.**
The Kress Building
301 19th Street North, Suite 581
Birmingham, AL 35203
Telephone:  (205) 458-1204
Facsimile:   (205) 208-9632
Email:    MicahAdkins@ItsYourCreditReport.com